## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

**ASHLEY MAHONEY, in her capacity as Parent and Legal Guardian of C.M.,**

      **Plaintiff,**

**v.**

**BRAND 44 TRADING, LLC, d/b/a b4 ADVENTURE, and SAM'S WEST, INC., d/b/a BUFORD SAM'S CLUB,**

      **Defendants.**

**CIVIL ACTION**

**File No. _____**

---

## COMPLAINT

---

**COMES NOW**, Plaintiff, Ashley Mahoney, in her capacity as Parent and Legal Guardian of C.M., to sue Defendants, Brand 44 Trading, LLC, doing business as b4Adventure ("b4Adventure"), and Sam's West, Inc., doing business as Buford Sam's Club ("Sam's Club"), for the claims stated herein. In support thereof, Plaintiff states:

### SUMMARY OF THE ACTION

Plaintiff brings this civil action, as parent, legal guardian, and next friend of her minor daughter C.M., to recover for the severe and permanent injuries C.M. suffered from a fall caused by a defective and unreasonably dangerous Playzone-Fit kidtrix™ Doorway Swing (the "Subject Swing"). C.M. sustained severe injuries to her back, neck, and spine from the crash, including multiple fractured vertebrae. Plaintiff sues Defendants for their role in designing, manufacturing, assembling, producing, and distributing the Subject Swing in a defective, unmerchantable, and unsuitable condition without adequate warning or instruction, which caused C.M.'s injuries.

## THE PARTIES, JURISDICTION & VENUE

1.      Plaintiff, Ashley Mahoney, Parent and Legal Guardian of C.M., is a Georgia citizen, resident, and domiciliary of Forsyth County, Georgia. Ms. Mahoney is authorized to bring the claims alleged in this Complaint on behalf of C.M.

2.      Defendant b4Adventure is a Colorado LLC whose members are all citizens and domiciliaries of Colorado.

3.      b4Adventure submitted itself to the jurisdiction of this Court by doing, personally or through its agents, at all times material to this cause of action, the following acts:

    a.      Committing a tortious act within this state by selling and delivering defective products, including the Subject Swing and similar products, to persons, firms, or corporations in this state via its distributors, dealers, wholesalers, and brokers. Such swings were used by consumers in Georgia in the ordinary course of commerce and trade;

    b.      Conducting and engaging in substantial business and other activities in Georgia by selling and distributing products, including the Subject Swing, to persons, firms, or corporations in this state via its distributors, wholesalers, dealers, and brokers. Such swings were used by consumers in Georgia in the ordinary course of commerce and trade;

    c.      The acts or omissions of b4Adventure caused injuries to persons, including C.M., in Georgia. At or about the time of said injuries, b4Adventure engaged in solicitation activities in Georgia to purposefully promote the sale, consumption, and use of b4Adventure products, including the Subject Swing which is the subject of this Complaint;

    d.      Selling consumer products and toys, including the Subject Swing, with knowledge or reason to foresee that their products would be shipped in interstate commerce and would reach the market of Georgia users or consumers;

    e.      Harbor Freight is subject to the Georgia long-arm statute by doing business in Georgia and by committing torts where one or more elements of the tort or one or more of the tortious acts occurred in Georgia;

f.     The claims against b4Adventure are linked, related, and/or arise out of b4Adventure's conduct directed toward Georgia;

g.     Elements of the tort occurred in Georgia. Specifically, C.M. was using the Subject Swing when she was injured in Georgia;

h.     b4Adventure has purposefully availed itself of the Georgia market;

i.     b4Adventure's contacts with Georgia principally relate to the sale of consumer products and toys and all of the conduct associated with such product sales and this civil action is related to and connected with the sale of its products;

j.     Due process and fair play and substantial justice are honored by this civil action going forward in this Georgia Court;

k.     There is little or no burden on b4Adventure litigating this case in this Georgia Court;

l.     It would be a tremendous burden and great inefficiency and unnecessary delay imposed on Plaintiff to litigate this case in another forum;

m.     Georgia has an interest in overseeing this litigation which involves injuries to a Georgia resident and tortious transactions which occurred in Georgia and defective products sold in Georgia;

n.     Public policy favors resolution of this dispute in this Georgia Court;

o.     b4Adventure's conduct and connection with Georgia are such that b4Adventure should reasonably anticipate being hauled into court in Georgia.

4.     b4Adventure cannot deny personal jurisdiction in this Court for the following:

a.     b4Adventure placed the Subject Swing into the stream of commerce under circumstances such that b4Adventure should reasonably anticipate being haled into court in Georgia;

b.     b4Adventure has a regular plan for the distribution of its new and used products within Georgia with the goal of achieving a commercial benefit from the sale of those products in Georgia;

c.     b4Adventure places its products into the stream of commerce by targeting Georgia—under circumstances that it could or should reasonably anticipate being haled into courts in Georgia—through a comprehensive distribution network that includes major retailers,

such as Sam's Club and Amazon.com.  In doing so, b4Adventure developed a market in Georgia for its swing products.

d.     b4Adventure has contracts with retail distributors in Georgia where b4Adventure contractually promises to come into courts in Georgia to defend claims arising from the failure of b4Adventure products that injure Georgia residents, like C.M.;

e.     b4Adventure operates interactive websites through which it markets, promotes, sells, and warrants its products to consumers in Georgia;

f.     b4Adventure oversees its product warranty process within Georgia;

g.     b4Adventure has clients in Georgia;

h.     b4Adventure spends thousands of dollars per year marketing its products in Georgia. In doing so, b4Adventure developed a market in Georgia for its products;

i.     b4Adventure has purposefully availed itself of the privileges and benefits of conducting activities within Georgia;

j.     b4Adventure holds patents and trademarks which it demands must be honored in Georgia;

k.     b4Adventure engages in national marketing of its products that pervades into Georgia;

l.     b4Adventure targets marketing specific to Georgia;

m.     Plaintiff's claims are connected with or relate to b4Adventure's contacts with Georgia.

5.     Therefore, the Court is authorized to exercise personal jurisdiction over b4Adventure.

6.     Defendant Sam's Club is an Arkansas corporation with its principal place of business in Arkansas.

7.     Defendant Sam's Club is registered to do business in the State of Georgia and may be served with process by serving its registered agent, The Corporation Company (FL), 106 Colony Park Drive, Ste. 800-B, Cumming, Georgia, 30040.

8.     Sam's Club is subject to personal jurisdiction in this Court under O.C.G.A. §§ 9-10-91, 14-2-1501, 14-2-1505 and *Allstate Ins. Co. v. Klein*, 262 Ga. 599 (1992) and its progeny, because it is registered to do business in Georgia and is therefore a resident of Georgia.

9.     In the alternative, Sam's Club is subject to the jurisdiction of this Court pursuant to Georgia's long-arm statute, O.C.G.A. § 9-10-91, because it transacts business within the state of Georgia; has a registered agent in the State of Georgia, specifically Forsyth County; caused injury to persons or property within the state of Georgia; manufactures, processes, or services products or materials that are used in the state of Georgia in the ordinary course of commerce, trade, or use; and engages in substantial and not isolated activity within the state of Georgia.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

11.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims stated herein occurred in this district.

## **CONDITIONS PRECEDENT**

12.     All conditions precedent have been satisfied or excused.

## FACTS

### Background on Express Product Warranty Provided by Brand 44 Trading, LLC

13.     Defendant Brand 44 Trading, LLC (b4Adventure), is in the business of and derives substantial profit from the sale of products in the sporting goods, hobby, and toy sectors, including the Subject Swing.

14.     The Doorway Swing's packaging, instructions, and labels refer to a website operated by b4 Adventure: www.playzonefit.com.

15.     When the www.playzonefit.com webpage is accessed, the visitor is redirected to b4adventure.com/pages/playzonefit.

16.     The b4adventure.com/pages/playzonefit webpage indicates that Playzone-fit is part of the b4Adventure family of brands, which "includes Slackers, American Ninja Warrior, Playzone-fit and 4Fun."

17.     Several of b4Adventure's "Top Products" are featured, including the Playzone-fit kidtrix™ Doorway Swing, along with a reference that the swing is a "parent tested, parent approved" product winner as declared by www.ptpa.com.

**Top Products**



Playzone-Fit Stepping Stones
$49.99



Playzone-fit kidtrix™ Doorway Swing
$67.99



Playzone-Fit Tri-flyer
Sold out

18.     Upon clicking the link for the swing depicted above, the visitor is brought to a b4Adventure sales listing webpage dedicated to the Subject Swing (https://b4adventure.com/products/playzone-fit-kidtrix-indoor-swing?variant=35678458413219).

19.     Near the top of the webpage for the Playzone-fit kidtrix Doorway Swing, there is an "FAQs" link.



20.     The FAQs link from the Subject Swing's listing page redirects to another b4Adventure webpage (https://b4adventure.com/pages/faq), which states that b4Adventure's products "come with a 1 year workmanship warranty."

21.     Plaintiff provided b4Adventure notice of breach of this express warranty on February 11, 2022. Such notice is attached hereto as **EXHIBIT 1**.

**The Incident**

22.    On October 31, 2021, Blake Winslett (C.M.'s father and Plaintiff Ashley Mahoney's partner) purchased the Subject Swing from Sam's Club's retail location in Buford, Georgia.

23.    The Subject Swing was purchased as a Christmas present for C.M.

24.    C.M. was thrilled to receive the Subject Swing for Christmas, and Mr. Winslett and Ms. Mahoney installed the Subject Swing according to the instructions provided in or about the first week of January 2022.

25.    C.M. was the appropriate age and weighed considerably less than the 150-pound weight limit provided in the instructions for the Subject Swing.

26.    C.M. used the Subject Swing off and on after her parents installed it in their house.

27.    On January 25, 2022, after less than a month of use, C.M. was using the Subject Swing as she normally did, swinging in the doorway of her mother's bathroom. At the time, Ms. Mahoney was keeping an eye on C.M. while she prepared for the day.

28.    C.M. was swinging in a moderate fashion when, suddenly and without warning, the stitching connecting the Subject Swing's seat to the straps failed and came apart, causing C.M. to crash to the floor.

29.    C.M. landed squarely on her spine, resulting in severe and permanent injuries to her back, neck, and spine, including multiple fractured vertebrae.

30.    Upon investigation, it was discovered that the Subject Swing was defective in its manufacture, design, and warning.

**CLAIMS FOR RELIEF**

**COUNT I – STRICT PRODUCTS LIABILITY**
**(Plaintiff v. Brand 44 Trading, LLC)**

31.     Plaintiff re-alleges and incorporates Paragraphs 1 through 30 of this Complaint as if fully stated herein.

32.     Defendant b4Adventure at all times material hereto, was engaged in the business of designing, manufacturing, assembling, testing, marketing, promoting, advertising, distributing, and selling toys such as the Subject Swing to the public.

33.     b4Adventure is strictly liable to Plaintiff under O.C.G.A. § 51-1-11 and other applicable law for the injuries suffered by C.M. Defendant b4Adventure was, at all times relevant to this action, the manufacturer of a product that was unreasonably and dangerously defective in its design, manufacture, and as marketed.

34.     b4Adventure has input and is actively involved in the conception, design, and specification of the Subject Swing.

35.     b4Adventure, as the maker of the Subject Swing who placed such swing into the marketplace to be distributed and sold in a defective and unreasonably dangerous condition, is strictly liable for the physical harm caused by the Subject Swing's failure, when, upon using the Subject Swing in a normal and foreseeable fashion, the stitching connecting the swing to the support straps catastrophically failed, injuring C.M. on January 25, 2022.

36.     Defendant b4Adventure expected the Subject Swing to reach the user or consumer without substantial change in the condition in which it was sold.

37.     Defendant b4Adventure placed the Subject Swing on the market with knowledge that it would be used without inspection for defects and dangers. b4Adventure knew, or should have known, that ultimate users would not and could not properly inspect the product for defects

and dangerous conditions, and that detection of such defects and dangers would be beyond the capabilities of such persons.

38.     The inherently and unreasonably defective and dangerous condition of the Subject Swing is a condition that was not readily apparent to Plaintiff, C.M., or similarly situated users, consumers and owners, who could foreseeably be seriously injured by said swing when used as intended.

39.     b4Adventure failed to provide notice of the defective and unreasonably dangerous condition of the Subject Swing to Plaintiff or C.M.

40.     Plaintiff and C.M. therefore did not know of the dangerous condition of the Subject Swing at the time of the incident. Had Plaintiff or C.M. been informed before using the Subject Swing of the swing's defective condition, C.M. would not have swung on the Subject Swing and, accordingly, she would not have been exposed to said defective and unreasonably dangerous condition.

41.     The Subject Swing was defective and unreasonably dangerous to ultimate users and consumers, including C.M., when designed, manufactured, assembled, distributed, and sold by b4Adventure. The defects in the Subject Swing include, but are not limited to:

    a.  The Subject Swing did not perform as safely as an ordinary consumer would expect when used as intended;

    b.  The Subject Swing had an unreasonably dangerous propensity to come apart and separate during normal use, causing users to crash to the ground;

    c.  The Subject Swing was unreasonably dangerous because of its design in that it failed to perform as safely as an ordinary consumer would expect when used in a manner reasonably foreseeable to b4Adventure, in that the components suffer from a dangerous propensity to separate or fail during use;

    d.  The Subject Swing was unreasonably dangerous because of its design in that the risk of danger in the design outweighed the benefits when used as intended, in that the swing has an unreasonably strong risk of separating into pieces during normal use causing injury to a rider, which greatly outweighs the benefits of the swing;

e.  The Subject Swing was unreasonably dangerous and defective because it was not produced in accordance with available alternative designs that were safer, feasible, and technically practicable; it was not state of the art and was not designed and manufactured to the level of technical knowledge that existed when it was made; and, it was made in such a way that it posed a risk of danger to users like C.M., that outweighed the benefits of the Subject Swing as designed and manufactured;

f.  The Subject Swing was unreasonably dangerous as manufactured as it did not conform to its intended design and perform as safely as the intended design would have performed, in that the swing separated into pieces during normal use, resulting in a crash all but certain to cause severe injury to users, like C.M.; and

g.  The Subject Swing was unreasonably dangerous and defective due to b4Adventure's failure to provide adequate warnings of the risks addressed herein that were known or knowable to b4Adventure in light of the generally recognized and prevailing best scientific knowledge available at the time of manufacture and distribution, including the use of appropriate warning stickers, placards, or documentation to alert users regarding the hazardous conditions described herein.

42.  For the reasons set forth above, the Subject Swing was unreasonably dangerous to foreseeable users, including Plaintiff, who used the Subject Swing in an ordinary and foreseeable manner.

43.  The defects described above directly and proximately caused the injuries sustained by Plaintiff in this foreseeable crash, in that they directly and in natural and continuous sequence produced or contributed substantially to Plaintiff's injuries.

**WHEREFORE**, Plaintiff, Ashley Mahoney, as next friend of C.M., demands judgment against Defendant Brand 44 Trading, LLC, for all injuries and damages sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT II – NEGLIGENT PRODUCTS LIABILITY
### (Plaintiff v. Brand 44 Trading, LLC)

44.  Plaintiff re-alleges and incorporates Paragraphs 1 through 30 of this Complaint as

if fully stated herein.

45.    At all times relevant herein, b4Adventure designed, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold the Subject Swing and its components. Defendant knew or should have known of the Subject Swing's dangerous condition wherein its components separate during normal use, resulting in a crash reasonably likely to injure users, like C.M.

46.    At all times relevant herein, Defendant designed the Subject Swing and owed Plaintiff and C.M. a duty of reasonable care to design, select, inspect, test, assemble, equip, market, distribute, and sell the Subject Swing and its components, so that it would operate safely under foreseeable conditions in the environment of its expected use.

47.    At all times relevant herein, as designed, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold by Defendant b4Adventure, the Subject Swing is and was defective, unreasonably dangerous, and unsafe for foreseeable users because it was inadequately designed and constructed, and failed to provide the degree of safety a reasonable consumer would expect during foreseeable use.

48.    At all times relevant herein, Defendant b4Adventure would have had and had no reason to believe that users would realize this potential danger.

49.    At all times relevant herein, Defendant b4Adventure was, willful, wanton, reckless, and careless and breached its duties of care owed to Plaintiff by:

   a.    failing to adopt and implement safety hierarchy procedures and policies;

   b.    failing to design, test, and assemble the Subject Swing so as to prevent its components from tearing apart during normal use, resulting in a crash reasonably likely to injure users;

   c.    failing to design, test, assemble, and sell the Subject Swing so that it would adequately perform its function while being used in a normal and foreseeable fashion;

d.  failing to exercise reasonable care in the design of the Subject Swing;

e.  failing to exercise reasonable care in the testing of the Subject Swing;

f.  failing to exercise reasonable care in the inspection of the Subject Swing;

g.  failing to adopt and implement adequate warnings regarding the Subject Swing;

h.  failing to exercise reasonable care to inform users of the Subject Swing's dangerous condition;

i.  failing to incorporate appropriate quality assurance procedures in design of the Subject Swing; and

j.  on such other and further particulars as the evidence may show.

50.    As a direct and proximate result of Defendant b4Adventure's negligence and the breaches complained herein, C.M. has suffered serious and permanent injuries from the crash.

**WHEREFORE**, Plaintiff, Ashley Mahoney, as next friend of C.M., demands judgment against Defendant, Brand 44 Trading, LLC, for all injuries and damages sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, punitive damages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Plaintiff v. Brand 44 Trading, LLC)

51.    Plaintiff re-alleges, adopts, and incorporates Paragraphs 1 through 30 of this Complaint as if fully stated herein.

52.    Privity of contract exists between Plaintiff and b4Adventure for the Subject Swing because b4Adventure extended Blake Winslett[1] an express warranty as shown *supra*.

---

[1] Georgia law extends horizontal privity to C.M. because he is a natural person who is in the family or household of the buyer and it is reasonable to expect C.M. may use, consume, or be affected by the Subject Swing. O.C.G.A. § 11-2-318.

53.     At the time b4Adventure sold the Subject Swing to Blake Winslett, the swing was not merchantable.

54.     Defendant b4Adventure thereby breached the implied warranty of merchantability.

55.     Defendant b4Adventure's breach of the implied warrant of merchantability actually and proximately caused C.M.'s injuries and damages.

56.     On February 10, 2022, Plaintiff, provided express notice to b4Adventure of b4Adventure's breach of the implied warranty of merchantability. *See* **EXHIBIT A to EXHIBIT 1**.

**WHEREFORE**, Plaintiff, Ashley Mahoney, as next friend of C.M., demands judgment against Defendant, Brand 44 Trading, LLC, for all injuries and damages sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT IV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(Plaintiff v. Sam's West, Inc.)

57.     Plaintiff re-alleges, adopts, and incorporates Paragraphs 1 through 12 and 21 through 30 of this Complaint as if fully stated herein.

58.     Plaintiff purchased the Subject Swing directly from Defendant Sam's West, Inc.

59.     At the time Sam's West, Inc., sold the Subject Swing to Blake Winslett, the swing was not merchantable.

60.     Defendant Sam's West, Inc., thereby breached the implied warranty of merchantability.

61.     Defendant Sam's West, Inc.'s breach of the implied warrant of merchantability

actually and proximately caused C.M.'s injuries and damages.

62.   On February 10, 2022, Plaintiff, provided express notice to Sam's West, Inc., of its breach of the implied warranty of merchantability. *See* **EXHIBIT A to EXHIBIT 1**.

**WHEREFORE**, Plaintiff, Ashley Mahoney, as next friend of C.M., demands judgment against Defendant, Sam's West, Inc., for all injuries and damages sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

a.   That the Court issue service of process to Defendants Brand 44 Trading, LLC, and Sam's West, Inc., as authorized by law;

b.   The Defendants be served with a copy of Plaintiff's Complaint for Damages and show cause why the prayers for relief requested by Plaintiff herein should not be granted;

c.   That Plaintiff be granted a trial by jury in this matter;

d.   That Plaintiff recover from Defendants for all damages, economic and non-economic, tangible and intangible, general and special, as allowed by Georgia law and set forth above;

e.   That all costs be taxed against Defendants;

f.   That the Court award such other and further relief, as it shall deem just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:                                      Respectfully submitted,

                                            */s/Joshua R. Jacobson*
                                            **Joshua R. Jacobson, Esq.**
                                            GBN: 471903
                                            **Morgan & Morgan, P.A.**
                                            20 N. Orange Avenue, Suite 1600
                                            Orlando, Florida 32801
                                            Telephone: (407) 236-5703
                                            Primary email: jjacobson@forthepeople.com
                                            Secondary email: taide@forthepeople.com

Morgan & Morgan
191 Peachtree St., NE, #4200
Atlanta, GA 30303
Telephone: (404) 965-8811

16